[Cite as *State v. Smith*, 2026-Ohio-359.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

STANLEY SMITH,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 BE 0030**

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 23 CR 189

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan,* Belmont County Prosecutor, and *Atty. Jacob A. Manning*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. John P. Laczko*, for Defendant-Appellant.

Dated: February 4, 2026

**DICKEY, J.**

{¶1} Appellant, Stanley Smith, appeals from the June 20, 2025 judgment of the Belmont County Court of Common Pleas convicting him of trafficking in cocaine, possession of cocaine, aggravated trafficking in drugs (methamphetamine), and aggravated possession of drugs (methamphetamine) and consecutively sentencing him to prison following a jury trial. On appeal, Appellant raises four assignments of error: (1) the trial court erred in violating his right to a speedy trial; (2) the court erred in overruling his motion to suppress; (3) his convictions were against the manifest weight of the evidence; and (4) the court erred in permitting Appellee, the State of Ohio, to present the testimony of a witness via live video conference. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2} The charges in this case stem from a November 2022 investigation involving a residence located at 46870 Dutch Lane, Apartment A, St. Clairsville, Belmont County, Ohio 43950. The landlord who owned the building called law enforcement with concerns of suspicious activity. The landlord installed security cameras and provided video footage to the police. The videos showed several people coming and going which a detective believed indicated drug activity.

{¶3} Appellant was identified as one of the individuals on the videos. Because Appellant had a set of keys and unlocked the doors, it appeared to detectives that Appellant was living at or staying at the apartment. On November 10, 2022, a detective saw a vehicle leaving the apartment and he followed the car. The detective observed a moving violation and conducted a traffic stop. Appellant was the driver of the vehicle.

{¶4} During the course of the stop, the detective used his canine to conduct a sniff of the perimeter of the vehicle and it signaled on the driver's side of the car. The detective conducted a further search of the vehicle and found drugs in a purse. Aubrey Kemp ("Kemp"), a passenger, was arrested for possession of drugs. Additional drugs were found on Kemp during a search at the jail.

{¶5} Law enforcement obtained a search warrant for the apartment as well as for all persons who were located therein. The search was conducted after Kemp had been bonded out of jail and had been brought back to the apartment by Appellant.

Significant quantities of drugs were located during the search. Appellant, Kemp, and William Morgan ("Morgan"), the lessee of the apartment, were arrested. Appellant's charges resulted from the drugs found during the apartment search as well as from information obtained from another search warrant for his two cell phones.

{¶6} On July 6, 2023, Appellant was indicted by the Belmont County Grand Jury on four counts: count one, trafficking in cocaine, a felony of the first degree in violation of R.C. 2925.03(A)(2) and (C)(4)(F); count two, possession of cocaine, a felony of the first degree in violation of R.C. 2925.11(A) and (C)(4)(E); count three, aggravated trafficking in drugs (methamphetamine), a felony of the first degree in violation of R.C. 2925.03(A)(2) and (C)(1)(E); and count four, aggravated possession of drugs (methamphetamine), a felony of the first degree in violation of R.C. 2925.11(A) and (C)(1)(D). All four counts included specifications for forfeiture of money in a drug case pursuant to R.C. 2941.1417(A).

{¶7} On July 13, 2023, Appellant was scheduled for an arraignment but he did not appear. It later became clear that Appellant was serving another sentence elsewhere in Ohio. Appellant's arraignment was rescheduled once he was located. However, the trial court learned Appellant had been moved to another facility and his arraignment was rescheduled again.

{¶8} Appellant was appointed counsel and his arraignment was ultimately held on September 13, 2023. Appellant pled not guilty and he was released on a recognizance bond. Appellant later failed to appear for a pretrial conference and a warrant was issued for his arrest. Appellant was arrested and brought back before the trial court on February 8, 2024. Appellant was detained from that point forward. A jury trial was scheduled for April 11, 2024. However, Appellant filed numerous motions to continue and two of his attorneys moved to withdraw, thereby resulting in various delays in bringing this case to trial.

{¶9} On October 17, 2024, Appellant filed a motion to dismiss on speedy trial grounds. One week later, the State filed a response in opposition. On October 31, 2024, after finding it clear that Appellant's right to a speedy trial had not been violated, the trial court overruled his motion to dismiss. A jury trial was now set for November 5, 2024. On that date, Appellant refused to change out of inmate apparel and wanted a new attorney.

Defense counsel sought to withdraw which was granted by the trial court. Appellant was appointed new counsel and a jury trial was re-set for March 3, 2025.

{¶10} On January 28, 2025, the State filed a motion to have Kemp, an out-of-state resident, appear as a witness during trial via live video. A plea agreement hearing was held on February 10, 2025. Appellant requested that his third appointed attorney be discharged from representing him because she would not file motions regarding suppression and speedy trial. Appellant's counsel advised that she had discussed these two motions with Appellant but determined his requests had no merit. Finding Appellant's basis to terminate his third attorney also had no merit, the trial court overruled his request. Over Appellant's objection, the court granted the State's motion for Kemp to appear at trial via live video.

{¶11} On February 20, 2025, the trial court granted Appellant leave to file a motion to suppress evidence which he filed four days later. In his motion to suppress, Appellant asserted there was insufficient probable cause to issue the Dutch Lane and the cell phones search warrants.

{¶12} A suppression hearing was held on March 3, 2025. The State presented testimony from three detective witnesses with the Belmont County Sheriff's Department ("BCSD"): (1) Jason Schwarck; (2) Dustin Hilderbrand; and (3) Tyler Grant. The State also admitted the Dutch Lane search warrant (State's Exhibit 1), Appellant's cell phones search warrant (State's Exhibit 2), and Detective Schwarck's body camera and videos from outside the apartment building (State's Exhibit 3).

{¶13} At the suppression hearing, it was revealed that in early November 2022, the landlord who owned the Dutch Lane premises notified the BCSD of suspicious activity occurring there, specifically high-volume traffic and multiple people staying in one apartment, Apartment A, with at least two of the people not on the lease. The only individual named on the lease, Morgan, had been arrested in the past for possession of drugs. The landlord provided access to security cameras.

{¶14} Upon viewing the camera footage, the landlord's conveyed information was found to be accurate. Multiple people had come and gone from the premises in very short increments in time indicating that drug transactions were occurring. Furthermore,

detectives confirmed Appellant and Kemp were living there. This camera footage shows Appellant at the premises. *See* (State's Exhibit 3).

{¶15} On November 10, 2022, camera footage revealed Appellant, Kemp, and Ricky Temple ("Temple") leave the premises. They were followed by law enforcement. A traffic stop was initiated for a minor traffic violation. During the stop, Appellant, the driver of the vehicle, provided identification that he lived in Cuyahoga County but Detective Schwarck believed Appellant told him he lived in St. Clairsville. A canine was deployed and indicated on the driver's side front area of the vehicle. Illegal drugs were found in Kemp's purse. Kemp was arrested and Appellant received a warning for a traffic violation.

{¶16} The suppression hearing further revealed that at the jail, additional illegal drugs were found in Kemp's purse and hidden inside her buttocks. A search of Appellant's criminal history showed several trafficking in drugs and possession of drugs arrests. Detective Hilderbrand then obtained a search warrant for the Dutch Lane premises and all persons present. *See* (State's Exhibit 1). The detectives waited to execute the search warrant until Appellant and Kemp returned to the apartment after Kemp posted bond.

{¶17} Upon execution of that search warrant, Appellant was located in the kitchen near three digital scales. The search warrant revealed a hotel receipt and pay stub in Appellant's name. It also revealed digital scales, several bags of narcotics in a man's sock, a bag in a man's coat containing pills, and a large amount of marijuana found in a trash can. The bag in the man's coat contained close to 1,000 pills that a laboratory confirmed were methamphetamine. The detectives seized all of the occupants' cell phones including two belonging to Appellant. A search warrant was obtained to view Appellant's two cell phones. *See* (State's Exhibit 2).

{¶18} On March 10, 2025, Appellant filed a second motion to dismiss on speedy trial grounds. The State filed a response in opposition three days later. On March 20, 2025, the trial court overruled Appellant's motion to suppress. The next day, the court also overruled Appellant's second motion to dismiss on speedy trial grounds.

{¶19} A jury trial commenced on May 27, 2025. The State presented 20 exhibits and eight witnesses: (1) Matthew Rosebrook, a forensic computer specialist with the Ohio

Department of Public Safety in the Ohio Narcotics Intelligence Center; (2) Detective Hilderbrand; (3) Detective Schwarck; (4) Morgan; (5) Kemp; (6) Rusty Lucey, a detective sergeant with the BCSD; (7) Detective Grant; and (8) Lauren Ditto, an evidence analyst with the Ohio Bureau of Criminal Investigations ("BCI"). The defense presented one witness, Appellant. Much of the testimony from the jury trial overlaps the testimony from the suppression hearing.

{¶20} Detective Hilderbrand repeated that the initial contact in this case came from the landlord who owned the Dutch Lane premises. He confirmed that law enforcement had been given access to the videos. The videos were played for the jury. *See* (State's Exhibit 6 a-o). The videos showed Appellant frequently using a set of keys to access the apartment. Detective Schwarck testified it appeared Appellant was staying at the premises. Detective Schwarck also testified regarding the paperwork he found with Appellant's name on it, again linking Appellant to the apartment.

{¶21} The videos also connected Appellant to the evidence found within the apartment. On one video, Appellant is shown wearing the jacket in which a large amount of cash was found. *See* (State's Exhibit 12). That coat was also found next to a large quantity of drugs. Detective Schwarck testified the drugs were in the vicinity of the paperwork with Appellant's name on it. Detective Grant also testified as to the drugs that he found in the jacket pocket within the apartment.

{¶22} Morgan testified Appellant had moved in to the apartment with him. Morgan indicated Appellant paid half the rent and lived there until they were arrested. Morgan also revealed he bought drugs off of Appellant.

{¶23} Detective Schwarck testified with respect to the traffic stop that initially occurred involving Appellant, Kemp, and Temple. He also reconfirmed his testimony from the suppression hearing regarding Kemp acting suspiciously en route to the jail and finding drugs hidden in her buttocks area.

{¶24} Kemp testified via live video conferencing that at the time of the investigation, she was living with Appellant. Kemp indicated the pills found in her purse during her arrest were Appellant's drugs and that he gave them to her. Kemp further stated Appellant gave her the pills that were located inside her buttocks.

{¶25} BCI analyst Ditto testified that the cocaine seized weighed 52.55 grams. Ditto also testified that the methamphetamine tablets weighed 19.76 grams. Other tablets containing methamphetamine weighed 40.40 grams. A third set weighed 23.24 grams. The weighed drugs exceeded 150 grams. *See* (State's Exhibit 20).

{¶26} At the conclusion of the State's case, Appellant moved for an acquittal pursuant to Crim.R. 29 which was overruled by the trial court.

{¶27} Appellant testified on direct examination that he did not live at the Dutch Lane premises and had no knowledge of any drugs. Appellant said he never told Kemp to put drugs in her purse or inside her body on the date of the traffic stop. On cross-examination, Appellant acknowledged being on video footage, having keys to the apartment, and two cell phones. *See* (State's Exhibits 1, 3).

{¶28} The jury found Appellant guilty on all four counts, including the specifications, as contained in the indictment. A proportionality review hearing was held on June 18, 2025. The trial court found that the funds at issue ($1,620) were ordered forfeited to the State.

{¶29} On June 20, 2025, the trial court merged counts one and two and counts three and four. The court sentenced Appellant to ten years in prison on count one and ten years on count three. The sentences were ordered to be served consecutively for an aggregate total of 20 to 25 years under the Reagan Tokes Law. The court granted Appellant 517 days of jail-time credit and notified him that his sentence includes a period of post-release control between two and five years.

{¶30} Appellant filed a timely appeal and raises four assignments of error.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF APPELLANT BY FAILING TO GRANT APPELLANT'S MOTION TO DISMISS DUE [TO] A VIOLATION OF HIS RIGHT TO A SPEEDY TRIAL.**

{¶31} In his first assignment of error, Appellant argues the trial court erred in failing to grant his motion to dismiss due to a violation of his right to a speedy trial.

Case No. 25 BE 0030

"An appellate court's review of a speedy trial claim is a mixed question of law and fact; a reviewing court gives due deference to the trial court's factual findings that are supported by competent, credible evidence and independently reviews whether the correct law was applied to the facts of the case." *State v. Baker*, 7th Dist. Mahoning No. 19 MA 0080, 2020-Ohio-7023, ¶ 98.

The right to a speedy trial is a fundamental right of a criminal defendant guaranteed by the United States and Ohio Constitutions. (Sixth Amendment to the U.S. Constitution; Ohio Constitution, Article I, Section 10.) States have the authority to prescribe reasonable periods in which a trial must be held, consistent with constitutional requirements. *Barker v. Wingo,* 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). "In response to this authority, Ohio enacted R.C. 2945.71, which designates specific time requirements for the state to bring an accused to trial." *State v. Hughes,* 86 Ohio St.3d 424, 425, 715 N.E.2d 540 (1999). The statutory speedy trial provisions, R.C. 2945.71 *et seq.*, were enacted to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and are to be strictly enforced. *State v. Pachay,* 64 Ohio St.2d 218, 416 N.E.2d 589 (1980). The prosecution and the trial court both have a mandatory duty to try an accused within the time frame provided by the statute. *State v. Singer,* 50 Ohio St.2d 103, 105, 362 N.E.2d 1216 (1977); see also *State v. Cutcher,* 56 Ohio St.2d 383, 384, 384 N.E.2d 275 (1978).

Because the general assembly recognized that some degree of flexibility is necessary, it allowed for extensions of the time limits for bringing an accused to trial in certain circumstances. *State v. Lee,* 48 Ohio St.2d 208, 209, 357 N.E.2d 1095 (1976). Accordingly, R.C. 2945.72 contains an exhaustive list of events and circumstances that extend the time within which a defendant must be brought to trial. "In addition to meticulously delineating the tolling events, the General Assembly jealously guarded its

judgment as to the reasonableness of delay by providing that time in which to bring an accused to trial 'may be extended only by' the events enumerated in R.C. 2945.72(A) through (I)." *State v. Ramey,* 132 Ohio St.3d 309, 313, 2012-Ohio-2904, 971 N.E.2d 937, 942, ¶ 24. These extensions are to be strictly construed, and not liberalized in favor of the state. *Id.*

*State v. Torres*, 7th Dist. Jefferson Nos. 12 JE 30 and 12 JE 31, 2014-Ohio-3683, ¶ 11-12.

*State v. Martin*, 2021-Ohio-3163, ¶ 18 (7th Dist.).

{¶32} R.C. 2945.71, "Time within which hearing or trial must be held," states in part:

> (C) A person against whom a charge of felony is pending:
>
> . . .
>
> (2) . . . shall be brought to trial within two hundred seventy days after the person's arrest.
>
> . . .
>
> (E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. . . .

R.C. 2945.71(C)(2) and (E).

{¶33} Appellant was charged with felony offenses.  As such, Appellant was required to be brought to trial within 270 days of his November 10, 2022 arrest.  R.C. 2945.71(C)(2).  Although R.C. 2945.71 requires that trial commence within 270 days after a defendant's arrest, the trial timeline may be extended by tolling events, as indicated by R.C. 2945.72, "Extension of time for hearing or trial," which provides:

The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against the accused, within or outside the state, by reason of confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure availability of the accused;

(B) Any period during which the accused is mentally incompetent to stand trial or during which the accused's mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;

(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon the accused's request as required by law;

(D) Any period of delay occasioned by the neglect or improper act of the accused;

(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

(F) Any period of delay necessitated by a removal or change of venue pursuant to law;

(G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;

(I) Any period during which an appeal filed pursuant to section 2945.67 of the Revised Code is pending;

(J) Any period during which an appeal or petition for a writ filed pursuant to section 2930.19 of the Revised Code is pending.

R.C. 2945.72(A)-(J).

The statute is clear that "[u]pon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." R.C. 2945.73(B). The time may be tolled by certain events, including continuances and motions. R.C. 2945.72(C), (E), and (H). Compliance with these speedy trial statutes is mandatory and the provisions are strictly construed against the State. *State v. Kozic*, 7th Dist. Mahoning No. 11 MA 160, 2014-Ohio-3788, ¶ 85.

*Martin*, 2021-Ohio-3163, at ¶ 21 (7th Dist.).

{¶34} R.C. 2945.73, "Discharge for delay in trial," states in part:

(C)(1) A person charged with a felony, who is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code, is eligible for release from detention. The court may release the person from any detention in connection with the charges pending trial and may impose any terms or conditions on the release that the court considers appropriate.

(2) Upon motion made at or before the commencement of trial, but not sooner than fourteen days before the day the person would become eligible for release pursuant to division (C)(1) of this section, the charges

shall be dismissed with prejudice unless the person is brought to trial on those charges within fourteen days after the motion is filed and served on the prosecuting attorney. If no motion is filed, the charges shall be dismissed with prejudice unless the person is brought to trial on those charges within fourteen days after it is determined by the court that the time for trial required by sections 2945.71 and 2945.72 of the Revised Code has expired. . . .

R.C. 2945.73(C)(1) and (2).

{¶35} There was no determination by the trial court that the time for trial required by R.C. 2945.71 and 2945.72 had expired. Thus, upon filing his motions, Appellant was not entitled to immediate dismissal of the charges but rather only release. Appellant would only have been entitled to dismissal had he not been brought to trial within 14 days of the filing of the motion if the time for bringing him to trial had expired. .

{¶36} The trial court properly calculated the time and determined that Appellant's speedy trial rights had not been violated. Appellant incorrectly believes the time between the filing of the indictment and his actual arraignment is attributed to the State. As stated, R.C. 2945.72 tolls the calculation of the speedy trial time during:

> (A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against the accused, within or outside the state, by reason of confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure availability of the accused[.]

R.C. 2945.72(A).

{¶37} There is no dispute that at the time of the indictment, Appellant was detained in Ohio on other unrelated charges or that Appellant's failure to appear at his scheduled arraignment on July 13, 2023 was due to his incarceration. Appellant's only dispute is that the State failed to exercise reasonable diligence to secure his availability.

{¶38} Contrary to Appellant's position, the State had no reason to know, at the time of the July 6, 2023 indictment, that Appellant had been incarcerated. Reasonable

Case No. 25 BE 0030

diligence is shown in the fact that within one week, Appellant was located. Appellant's arraignment was then rescheduled for August 25, 2023, which allowed him to appear via video. Unbeknownst to the trial court, before August 25, 2023, Appellant had been moved from the Northeast Correctional Center to the Lorain Correctional Center. The court only learned this when the video was connected on August 25, 2023. The arraignment was once again re-set for September 13, 2023 and it was held that date.

**{¶39}** Based on the foregoing, the time between July 6, 2023 and September 13, 2023 should be attributed to Appellant. The State correctly points out:

> It is clear that [Appellant] was incarcerated at the time, and his incarceration was the reason he did not appear at the arraignment. The only question is the reasonableness of the attempts to bring him before the Belmont County Court for the arraignment. The fact that he was located within one week and his arraignment was scheduled within a reasonable time thereafter demonstrate that the State was attempting to bring him before the Court with reasonable diligence. Further, there is no evidence that anyone other than Appellant knew that he had been moved prior to the August 25, 2023 arraignment, and again, he was scheduled for a new arraignment reasonably quickly thereafter. For those reasons, none of the time between July 6, 2023 and September 13, 2023 should be attributed to the State.

(12/16/2025 Appellee's Brief, p. 7).

**{¶40}** The record reflects the following time is counted against Appellant's speedy trial time:

| Time Period | Calculated Days | Reason |
| --- | --- | --- |
| November 10, 2022 - November 17, 2022 | 24 | Appellant's initial incarceration following his arrest and until his release upon the dismissal of the charges, triple-counted due to R.C. 2945.71(E). |
| September 14, 2023 - November 27, 2023 | 75 | Appellant was placed on a recognizance bond in this case, and thus, this time is calculated only day-for-day. |

Case No. 25 BE 0030

| | | |
|---|---|---|
| February 8, 2024 - February 12, 2024 | 15 | Appellant had been located and detained and was held pending a new bond hearing. This time is triple-counted due to R.C. 2945.71(E). |
| February 12, 2024 - March 21, 2024 | 117 | Appellant was held pending trial in this case. This time is triple-counted due to R.C. 2945.71(E). |
| Total: | 231 | |

{¶41} Thus, up to March 21, 2024, a total of 231 days were attributed to the State. However, beginning March 21, 2024, Appellant began filing various motions that tolled the additional time until the trial actually occurred:

| Date | Action | Effect |
|---|---|---|
| March 21, 2024 | Appellant filed a motion to continue, which was granted. (March 21, 2024 JE). | Trial was continued generally and a new pretrial conference was set for April 8, 2024. |
| April 8, 2024 | Appellant orally requested a continuance of the pretrial conference which was granted. (April 9, 2024 JE). | Pretrial conference was continued to April 29, 2024. |
| April 22, 2024 | Appellant moved to continue the pretrial conference. (Motion to Continue). | Pretrial conference was continued to June 17, 2024. (April 30, 2024 JE). |
| June 17, 2024 | Appellant orally requested an additional continuance to conduct certain testing of evidence. (June 20, 2024 JE). | Pretrial conference was continued to July 29, 2024. |
| July 29, 2024 | Appellant orally requested an additional continuance. (Aug. 5, 2024 JE). | Pretrial conference was continued to August 26, 2024. |
| September 23, 2024 | Appellant's counsel moved to withdraw. (Mot. to Withdraw as Counsel). | New counsel was appointed and a new pretrial conference was set for October 7, 2024. (Sept. 24, 2024 JE). |
| September 24, 2024 | Trial set for October 17, 2024. (Sept. 24, 2024 JE). | Trial was now scheduled. |
| October 9, 2024 | Appellant's counsel moved for a continuance to adequately prepare for trial. (Oct. 11, 2024 JE). | Trial now set for November 5, 2024. |

| November 5, 2024 | Appellant's counsel moved to withdraw and Appellant raised various issues addressed by the Court. (Nov. 6, 2024 JE). | A new pretrial conference was set for December 2, 2024. |
|---|---|---|
| December 2, 2024 | Pretrial conference was held. (Dec. 2, 2024 JE). | Trial was set for March 3, 2025. |
| February 20, 2025 | Final pretrial conference held; Appellant orally moved for leave to file a motion to suppress. (Feb. 20, 2025 JE). | Trial continued generally. |
| March 4, 2025 | Appellant requested and was granted leave to file a renewed motion to dismiss. (Mar. 4, 2025 JE). | Trial remained continued generally. |
| April 7, 2025 | Following rulings on the various pending motions, the court set a new trial date at the first date on which Appellant's counsel was available. (Apr. 8, 2025 JE). | Trial was set for May 27, 2025. |

{¶42} Accordingly, from Appellant's November 10, 2022 arrest up to March 21, 2024, a total of 231 days were attributed to the State. Following March 21, 2024, all of the time that it took to actually schedule and hold the jury trial was attributed to Appellant. The trial was delayed not due to any conduct on the part of the State or the trial court. Rather, the trial was delayed due to Appellant or his counsel requesting continuances. *See* R.C. 2945.72(A)-(J). Because there were multiple tolling events, as addressed, Appellant's speedy trial clock did not reach the 270th day. Thus, Appellant's right to a speedy trial was not violated.

{¶43} Appellant's first assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE AS BOTH SEARCH WARRANTS LACKED PROBABLE CAUSE ON THEIR FACE.**

{¶44} In his second assignment of error, Appellant contends the trial court erred in overruling his motion to suppress because the Dutch Lane and the cell phones search warrants lacked probable cause.

A trial court's decision to deny a motion to suppress involves a mixed question of law and fact: legal questions are reviewed de novo, but factual issues are rarely disturbed as the trial court is the fact-finder at the suppression hearing and occupies the best position to evaluate witness credibility. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. In other words, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence; upon accepting the facts as true, the appellate court independently determines, without deferring to the trial court's conclusion, whether the facts satisfy the applicable legal standard. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

The Fourth Amendment imposes a reasonableness standard on the exercise of discretion by government officials. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 12, citing *Delaware v. Prouse*, 440 U.S. 648, 653-654, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1990). The permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. *Id.* citing *Prouse* at 654, 99 S.Ct. 1391, 59 L.Ed.2d 660.

The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Ohio Constitution, Article I, Section 14, is nearly identical to its federal counterpart. *State v. Kinney*, 83 Ohio St.3d 85, 87, 698 N.E.2d 49 (1998).

For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant

to a warrant. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). This requires a two-step analysis: First, there must be probable cause. If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed. *Mapp v. Ohio*, 367 U.S. 643, 657, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

Probable cause exists when a reasonably prudent person would believe that there is a fair probability that the place to be searched contains evidence of a crime. *Illinois v. Gates*, 462 U.S. 213, 246, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). However, "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the (probable-cause) decision." *Id.* at 235, 103 S.Ct. 2317. "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 370-71, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt, . . . and that the belief of guilt must be particularized with respect to the person to be searched or seized . . . ." *Id.*, citing *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).

*State v. Bugno*, 2022-Ohio-2008, ¶ 32 (7th Dist.), quoting *State v. Smith*, 2021-Ohio-3330, ¶ 30-34 (7th Dist.).

{¶45} Regarding the Dutch Lane search warrant, Appellant challenges that because it allowed a search of "all persons" present, law enforcement lacked probable cause to search him. However, the Supreme Court of Ohio has rejected the argument that an "all persons" warrant is per se invalid. *Kinney*, 83 Ohio St.3d 85, at syllabus. Specifically, the Court held that "an 'all persons' clause may still be 'carefully tailored to its justifications' if probable cause to search exists against each individual who fits within the class of persons described in the warrant." *Id.* at 91. "The controlling inquiry is

whether the requesting authority has shown probable cause that every individual on the subject premises will be in possession of, at the time of the search, evidence of the kind sought in the warrant." *Id.*

{¶46} The foregoing standard has been met in this case. The evidence supported a search of the Dutch Lane premises and a search of the persons (including Appellant) found therein. There was plenty of indication that the occupants were using the apartment to sell drugs. It was also sufficient to believe that evidence of criminal activity would be found on the persons located in the apartment. The warrant to search the apartment and the persons present as well as the evidence obtained therein was properly allowed.

{¶47} It is clear that probable cause existed in this case which is supported by the following: surveillance video of Appellant at the premises on multiple occasions; observed behavior that experienced officers deemed consistent with illegal drug activity occurring at the premises; the passenger in the vehicle that Appellant was driving had a significant amount of illegal drugs on and in her; Appellant had begun their travels from the premises in question; Appellant was present at the premises when the search warrant was executed and found near drug paraphernalia (digital scales); a paystub and receipt in Appellant's name were located in the residence; men's clothing, not occupied by the registered tenant, was located in the upstairs bedroom; and a significant amount of illegal drugs were found in the premises.

{¶48} Regarding the cell phones search warrant obtained during the search of the Dutch Lane premises, law enforcement had clear evidence that drugs were being distributed from the apartment. Appellant was located within the vicinity of the tools of distribution and his personal effects were located within the vicinity of large quantities of drugs themselves. The facts presented by law enforcement demonstrated reasonable suspicion that evidence of criminal activity would be located on Appellant's cell phones, and thus, that search warrant was also supported by probable cause.

{¶49} As stated, a suppression hearing was held on March 3, 2025. The State presented testimony from three detective witnesses with the BCSD: Detectives Schwarck, Hilderbrand, and Grant. The State also admitted the Dutch Lane search warrant (State's Exhibit 1), Appellant's cell phones search warrant (State's Exhibit 2), and Detective

Schwarck's body camera and videos from outside the apartment building (State's Exhibit 3).

{¶50} The testimony from the suppression hearing revealed the following: in early November 2022, the landlord who owned the Dutch Lane premises notified the BCSD of suspicious activity occurring there, specifically high-volume traffic and multiple people staying in one apartment, Apartment A, with at least two of the people not on the lease. The only individual named on the lease, Morgan, had been arrested in the past for possession of drugs. The landlord provided access to security cameras.

{¶51} Upon viewing the camera footage, the landlord's conveyed information was found to be accurate. Multiple people had come and gone from the premises in very short increments in time indicating that drug transactions were occurring. Furthermore, detectives confirmed Appellant and Kemp were living there. This camera footage shows Appellant at the premises. *See* (State's Exhibit 3).

{¶52} On November 10, 2022, camera footage revealed Appellant, Kemp, and Temple leave the premises. They were followed by law enforcement. A traffic stop was initiated for a minor traffic violation. During the stop, Appellant, the driver of the vehicle, provided identification that he lived in Cuyahoga County but Detective Schwarck believed Appellant told him he lived in St. Clairsville. A canine was deployed and indicated on the driver's side front area of the vehicle. Illegal drugs were found in Kemp's purse. Kemp was arrested and Appellant received a warning for a traffic violation.

{¶53} At the jail, additional illegal drugs were found in Kemp's purse and hidden inside her buttocks. A search of Appellant's criminal history showed several trafficking in drugs and possession of drugs arrests. Detective Hilderbrand then obtained a search warrant for the Dutch Lane premises and all persons present. *See* (State's Exhibit 1). The detectives waited to execute the search warrant until Appellant and Kemp returned to the apartment after Kemp posted bond.

{¶54} Upon execution of that search warrant, Appellant was located in the kitchen near three digital scales. The search warrant revealed a hotel receipt and pay stub in Appellant's name. It also revealed digital scales, several bags of narcotics in a man's sock, a bag in a man's coat containing pills, and a large amount of marijuana found in a trash can. The bag in the man's coat contained close to 1,000 pills that a laboratory

confirmed were methamphetamine. The detectives seized all of the occupants' cell phones including two belonging to Appellant. A search warrant was obtained to view Appellant's two cell phones. *See* (State's Exhibit 2).

{¶55} Accordingly, the trial court did not err in overruling Appellant's motion to suppress evidence as the Dutch Lane and the cell phones search warrants were supported by probable cause.

{¶56} Appellant's second assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT DENIED APPELLANT DUE PROCESS UNDER THE FOURTEENTH AMENDMENT DUE TO THE FACT HIS CONVICTIONS FOR TRAFFICKING IN COCAINE, POSSESSION OF COCAINE, TRAFFICKING IN METHAMPHETAMINE AND POSSESSION OF METHAMPHETAMINE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE JURY'S VERDICT WAS INCONSISTENT WITH THE EVIDENCE AND TESTIMONY PRESENTED AT TRIAL.**

{¶57} In his third assignment of error, Appellant maintains his convictions of trafficking in cocaine, possession of cocaine, aggravated trafficking in drugs (methamphetamine), and aggravated possession of drugs (methamphetamine) are against the manifest weight of the evidence.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an Appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. . . .

Case No. 25 BE 0030

The weight to be given to the evidence and the credibility of the witnesses are nonetheless issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

*State v. T.D.J.*, 2018-Ohio-2766, ¶ 47-48 (7th Dist.).

{¶58} "'[C]ircumstantial evidence and direct evidence inherently possess the same probative value.'" *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus.

{¶59} As stated, at the jury trial, Detective Hilderbrand repeated that the initial contact in this case came from the landlord who owned the Dutch Lane premises which was eventually searched. He confirmed that law enforcement had been given access to the videos. The videos were played for the jury. *See* (State's Exhibit 6 a-o). The videos showed Appellant frequently using a set of keys to access the apartment at issue. Detective Schwarck testified it appeared Appellant was staying at the premises. Detective Schwarck also testified regarding the paperwork he found with Appellant's name on it, again linking Appellant to the apartment.

{¶60} The videos also connected Appellant to the evidence found within the apartment. On one video, Appellant is shown wearing the jacket in which a large amount of cash was found. *See* (State's Exhibit 12). That coat was also found next to a large quantity of drugs. Detective Schwarck testified the drugs were in the vicinity of the paperwork with Appellant's name on it. Detective Grant also testified as to the drugs that he found in the jacket pocket within the apartment.

{¶61} Morgan testified Appellant had moved in to the apartment with him. Morgan indicated Appellant paid half the rent and lived there until they were arrested. Morgan also revealed he bought drugs off of Appellant.

{¶62} Detective Schwarck testified with respect to the traffic stop that initially occurred involving Appellant, Kemp, and Temple. He also reconfirmed his testimony from

the suppression hearing regarding Kemp acting suspiciously en route to the jail and finding drugs hidden in her buttocks area.

{¶63} Kemp testified via live video conferencing that at the time of the investigation, she was living with Appellant. Kemp indicated the pills found in her purse during her arrest were Appellant's drugs and that he gave them to her. Kemp further stated Appellant gave her the pills that were located inside her buttocks.

{¶64} BCI analyst Ditto testified that the cocaine seized weighed 52.55 grams. Ditto also testified that the methamphetamine tablets weighed 19.76 grams. Other tablets containing methamphetamine weighed 40.40 grams. A third set weighed 23.24 grams. The weighed drugs exceeded 150 grams. *See* (State's Exhibit 20).

{¶65} The trial court chose to believe the State's witnesses. *DeHass,* 10 Ohio St.2d at paragraph one of the syllabus. Based on the evidence presented, as previously addressed, the court did not clearly lose its way in finding Appellant guilty of trafficking in cocaine, possession of cocaine, aggravated trafficking in drugs (methamphetamine), and aggravated possession of drugs (methamphetamine). *Thompkins,* 78 Ohio St.3d at 387.

{¶66} Appellant's third assignment of error is without merit.

### ASSIGNMENT OF ERROR NO. 4

**APPELLANT CONTENDS THE TRIAL COURT PERMITTING WITNESS AUBREY KEMP TO TESTIFY AGAINST HIM AT TRIAL VIA VIDEO CONFERENCING VIOLATED HIS RIGHT TO CONFRONTATION AND HIS RIGHT TO DUE PROCESS.**

{¶67} In his fourth assignment of error, Appellant alleges the trial court erred in permitting Kemp to testify against him at trial via live video conferencing in violation of his rights to confrontation and due process.

The Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Confrontation Clause of the Sixth Amendment is made applicable to the states by the Fourteenth Amendment. *State v. Issa*, 93 Ohio St.3d 49, 59, 752 N.E.2d 904 (2001),

fn. 4. Consequently, this constitutional right applies to both federal and state prosecutions, but the right of confrontation in Article I, Section 10 of the Ohio Constitution provides no greater right of confrontation than the Sixth Amendment. *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 12.

However, the United States Supreme Court has held that although "the Confrontation Clause reflects a preference for face-to-face confrontation at trial," that "preference must occasionally give way to considerations of public policy and the necessities of the case." *Maryland v. Craig*, 497 U.S. 836, 849, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

In holding that the right to confrontation is not absolute, the court detailed a number of important reasons for that right, including (1) the giving of testimony under oath, (2) the opportunity for cross-examination, (3) the ability of the fact finder to observe demeanor evidence, and (4) the reduced risk that a witness will wrongfully implicate an innocent defendant.

*State v. Oliver*, 2018-Ohio-3667, ¶ 18-19 (8th Dist.), quoting *State v. Marcinick*, 2008-Ohio-3553, ¶ 14 (8th Dist.), citing *Craig* at 845-846.

{¶68} Courts have permitted exceptions to the requirement that a witness testify live at trial when the testimony can: "(1) be justified, on a case-specific finding, based on important state interests, public policies, or necessities of the case and (2) must satisfy the other three elements of confrontation — oath, cross-examination, and observation of the witness's demeanor." *Oliver* at ¶ 20.

{¶69} It is undisputed that Kemp resided in Arkansas at the time of the jury trial. Prior to that, she lived in Missouri. Kemp was working at the time of the trial. She had arranged to be live at the trial in Ohio when it was set for November 5, 2024. However, because Appellant moved to continue the trial, Kemp could not arrange to be live in Ohio a second time. Thus, although Kemp had arranged to be live at one point, after it was rescheduled, she requested to be allowed to appear via live video. On January 28, 2025,

Case No. 25 BE 0030

the State filed a motion to have Kemp appear as a witness during trial via live video. Over Appellant's objections, the trial court granted the State's motion.

{¶70} Although there were some minor technical glitches, Kemp's testimony was permitted to go forward without any major issues. Appellant was able to see Kemp throughout her testimony and could confront her. Based on the facts presented, the remote presentation of Kemp's testimony was justified in this case and Appellant's constitutional rights were not violated.

{¶71} Appellant's fourth assignment of error is without merit.

## CONCLUSION

{¶72} For the foregoing reasons, Appellant's assignments of error are not well-taken. The June 20, 2025 judgment of the Belmont County Court of Common Pleas convicting Appellant of trafficking in cocaine, possession of cocaine, aggravated trafficking in drugs (methamphetamine), and aggravated possession of drugs (methamphetamine) and consecutively sentencing him to prison following a jury trial is affirmed.

Waite, P.J., concurs.

Hanni, J., concurs.

Case No. 25 BE 0030

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**